1  BRADLEY D. PACK, SBA #023973
   ANDREW R. O'KEEFE, SBA #038744
2  **ENGELMAN BERGER, P.C.**
   2800 NORTH CENTRAL AVENUE, SUITE 1200
3  PHOENIX, ARIZONA 85004

4  Ph: (602) 271-9090
   Fax: (602) 222-4999
   Email: bdp@eblawyers.com
5  Email: aro@eblawyers.com

6  Attorneys for Sunny Energy, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SUNNY ENERGY, LLC,<br><br>EIN 47-2193055<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 2:24-bk-06111-BKM<br><br>**DEBTOR'S MOTION TO APPROVE SALE / ASSIGNMENT AND ASSUMPTION OF EXECUTORY CONTRACTS** |

Debtor and debtor-in-possession Sunny Energy, LLC ("**Debtor**") moves pursuant to 11 U.S.C. § 363(b) and (f) to approve the sale of Debtor's rights under the solar panel and/or battery sales and installation contracts identified in **Exhibit "A"** hereto (the "**Subject Contracts**") to Arizona Solar Wave & Energy LLC (Arizona Registrar of Contractor Nos. ROC 348936 and ROC 152297) ("**Solar Wave**"). To the extent the sale is deemed to be an assumption and assignment of executory contracts, Debtor requests that the Court approve such assumption and assignment pursuant to 11 U.S.C. § 365(a) and (f). The terms of the proposed transaction with Solar Wave are summarized as follows:

| | |
|---|---|
| **Time and place of sale** | Debtor will seek an expedited hearing on this Motion, which hearing may be conducted in person or by remote video appearance, at the Court's discretion. The Subject Contracts will be deemed assigned to Solar Wave immediately upon entry of the Order approving the Sale. |
| **Name of prospective buyer** | Arizona Solar Wave & Energy LLC |
| **Is prospective buyer an insider?** | No. This is an arms-length sale. |

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

| | |
|---|---|
| **Description of property to be sold** | All of Debtor's rights and obligations under the executory contractors for the installation of photovoltaic solar panels and/or batteries under the contracts identified in Exhibit "A." |
| **All entities known or believed to hold interests in the property to be sold** | None. |
| **Description of liens, claims, or interests** | There are no known liens. EverBright, LLC filed UCC-1 financing statements on October 19, 2023 and November 1, 2023, Document Nos. 2023-005-6519-4 and 2023-005-8354-8, claiming liens on accounts receivable for all projects that Debtor financed through EverBright. But Debtor did not finance any projects through EverBright, so its purported lien does not attach to anything. |
| **Terms and conditions of sale** | Solar Wave shall pay Debtor an amount for each of the Subject Contracts equal to the Contract Price listed on **Exhibit "A"** less the cost for Solar Wave to fulfill each contract, subject to adjustment as set forth in the Pricing Formula set forth in **Exhibit "A."** The total anticipated payment to Debtor, net of sale commissions, is expected to be about $300,000. |
| **Whether the property may be viewed** | No. |
| **Whether the offer is subject to higher and better bids** | No. While Debtor believes that the terms of this proposal are fair and reasonable and that Debtor would be unlikely to obtain a higher or better offer, price is not the sole consideration for this transaction. The contracts at issue are primarily consumer / residential contracts that may only be completed a qualified and properly licensed contractor. Solar Wave is duly qualified and has a 25-year history of providing quality service. It would be inordinately difficult to investigate the qualification of any other prospective bidders within the expedited timeline upon which Debtor proposes to complete this sale. |
| **Date by which objections must be filed** | To be determined – Debtor will seek an expedited hearing and an accelerated deadline for filing objections. |
| **Whether any compensation will be paid from the sale proceeds, to whom, and whether the recipient is an insider** | Yes – sales commissions will be paid to Debtor's sales representatives upon payment to Debtor as set forth on **Exhibit "A."** |
| **Whether there is an appraisal** | No. |
| **Whether any motions for stay relief have been filed** | No. |

At the time Debtor filed its bankruptcy petition, it believed it would be able to complete its remaining projects and continue operating its business. Since the filing of the

4864-7721-5197, v. 1

bankruptcy petition, however, Debtor has reached the conclusion that a true reorganization would be difficult to achieve in light of the lack of an immediate source of funding to pay the considerable costs of completing all of Debtor's remaining projects itself, a loss of key personnel, and the fact that a substantial number of Debtor's existing customers have requested to cancel their contracts due to concerns about Debtor's ability to satisfactorily perform them.

The sale of the Subject Contracts to Solar Wave will result in numerous benefits to the bankruptcy estate, in that it will: (a) generate a substantial amount of income that may be distributed to creditors holding allowed claims; (b) reduce or eliminate the contingent § 507(a)(7) priority claims of those customers under the Subject Contracts who gave pre-petition cash deposits to Debtor for a refund of those deposits, as Solar Wave's completion of the contract would negate any claim to a refund; and (c) ensure the customers under the Subject Contracts of the prompt, safe, and professional completion of their work by a duly licensed contractor.

This Motion is supported by the following Memorandum of Points and Authorities and the papers and pleadings on file, all of which are incorporated herein by this reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   FACTS AND PROCEDURAL HISTORY.

#### A.   Parties and Jurisdiction.

1. On July 26, 2024 (the "**Filing Date**"), Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code. James Cross is the duly appointed Subchapter V trustee (the "Sub V Trustee").

2. Debtor is a member-managed Arizona limited liability company with its principal place of business in Tempe, Arizona. Debtor is in the business of solar sales, installation, and service business.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M) and (O).

3

4864-7721-5197, v. 1

**B.     Events Leading to Filing of Bankruptcy Petition.**

4.      Debtor was formed in 2014, and began operations in 2015, as a solar sales, installation, and service business.

5.      Debtor made the decision to seek Chapter 11 protection after nearly 18 months of declining business. The economic conditions that have had a major negative effect on Debtor began around January of 2023. Many solar companies have been affected throughout the country, but Arizona has been hit harder than most. Specifically, higher interest rates, combined with utility rates, which are unfriendly towards solar, make it difficult to show consumers the immediate savings by using solar energy—which is what new consumers seek. The majority of Debtor's new customers were financing their solar purchases. But given the increased interest rates, the majority of systems purchased are only from those who can pay for their systems outright. That had the effect of reducing Debtor's business by more than 50%.

6.      Debtor believed it needed to file the bankruptcy petition on an emergency basis because it was facing the potential of an imminent lock-out or eviction by GKI Industrial Phoenix, LLC ("**Landlord**"), the landlord of the warehouse/office space that Debtor rents, located at 2414 W. 14th St., Tempe, AZ 85281 (the "**Premises**").

7.      To avoid what Debtor believed at the time would be the potentially catastrophic effect of such a lock-out, Debtor filed its bankruptcy petition without having first completed its bankruptcy schedules and statement of financial affairs. It has since filed its statements and schedules and has appeared before the Court on a motion to approve the payment of pre-petition wages.

**C.     Debtor's Plan for an Orderly Winding Up and Liquidation.**

8.      At the outset of this case, Debtor was optimistic about its ability to complete a successful reorganization, which could be financed by a modest DIP loan from its principals that would generate the funds necessary for Debtor to complete its backlog of installation projections, and which in turn would generate additional operating revenue for Debtor. Debtor

4

1  believed that improvements in solar technology and reductions in costs would drive greater demand and permit Debtor to operate at increased profit margins, with the effect to be felt around mid-2025.

9. Since the filing of its bankruptcy petition, however, Debtor has faced unanticipated setbacks that make the prospect of a true reorganization harder to achieve than Debtor originally believed. In particular, a number of employees quit shortly after Debtor filed its bankruptcy petition. Debtor has since further reduced its workforce to cut its operating costs to a more manageable level. Additionally, a substantial number of Debtor's customers have expressed pessimism about Debtor's ability to timely complete their projects and have stated a desire to cancel their contracts with Debtor. Finally, it has become apparent that the costs of completing all of the work Debtor has left to do under its contracts is more than Debtor's principals are willing or able to lend.

10. As a result, Debtor believes that a more realistic and feasible approach for maximizing the return to creditors in this case is for Debtor to complete an orderly wind-down of its business through the sale or assignment of the Subject Contracts to Solar Wave, the completion of certain other outstanding projects that are already close to completion by Debtor's remaining workforce, and the liquidation of Debtor's remaining property.

11. Debtor's counsel has already been in discussions with counsel for Landlord concerning the rejection of its lease. Debtor expects to be in a position to vacate the Premises by mid-September 2025, at which time the rejection would become effective, and Debtor would stop accruing the administrative expenses associated with continued occupancy. In order to meet this objective, it is necessary or at least highly desirable that the Court approve the sale of the Subject Contracts so that all materials and equipment required to complete the project can be stored at Solar Wave's facilities and all personnel working on the projects can work out of Solar Wave's office.

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

**D.     The Proposed Sale / Assignment of the Subject Contracts.**

12.     Arizona Solar Wave is in the business of supplying and installing residential and commercial solar panel systems and electronic vehicle charging systems. It has been in business since 1999. Its principal Bryan McCormick is an electrical engineer and a lifelong resident of Arizona. It holds CR-11 (commercial electrical installation, repair, and alteration of electrical equipment, material, and wiring) and KB-1 (dual Building Contractor and General Residential Contractor) licenses with the Arizona Registrar of Contractors ("AROC"). It has active surety bonds with RLI Insurance Company, no history of discipline with AROC, and it holds an A+ rating from the Better Business Bureau. In short, Debtor believes that Solar Wave is well qualified to complete the work remaining under the Subject Contracts.

13.     Solar Wave has already completed performance for Debtor under several contracts as a subcontractor. The subcontracting of solar panel installation projects is an ordinary course transaction for the industry and is also within the ordinary course of Debtor's business.

14.     Debtor has entered into an agreement with Solar Wave for the sale and assignment of the Subject Contracts upon the following terms, subject to the entry of an Order of this Court approving the sale:

    a.     Upon entry of an Order approving this Motion, Sunny Energy will assign each of the Subject Contracts to Solar Wave, along with all design and permitting work completed by Debtor through the date of the assignment.

    b.     Solar Wave will use its best efforts to complete the design, permitting, construction and commissioning of all projects within 120 days of assignment.

    c.     Upon completion of the work for each project and payment by each customer (or payment from any finance company or other third-party made on behalf of the customer) for the work, Solar Wave shall pay Debtor an amount for each of the Subject Contracts equal to the Contract Price listed on **Exhibit "A"** less the cost for

6

Solar Wave to fulfill each contract, subject to adjustment as set forth in the Pricing Formula set forth in **Exhibit "A."** The total anticipated payment to Debtor, net of sale commissions, is expected to be about $300,000. From the payments received from Solar Wave, Debtor shall pay the commissions listed on Exhibit "A" to the sales representatives who procured the Subject Contract(s), if any.

    d.    At its discretion, Solar Wave may enter into modifications or amendments of the Subject Contracts or may enter into new contracts with the customers under the Subject Contracts, provided that such amendments, modifications, or new contracts may not materially alter Solar Wave's payment obligations to Debtor with respect to the Subject Contracts.

15.    Debtor anticipates that after all adjustments have been made to the purchase price for each of the Subject Contracts, the cumulative net payment to Debtor will be about $300,000, before sales commissions.

16.    Debtor has prepared cash flow projections that incorporate the income Debtor anticipates it will receive from Solar Wave under this proposed sale, as well as the income Debtor expects it will generate from the completion of those projects that it undertakes to finish itself, and from the collection of Debtor's remaining accounts receivable. A copy of the Debtor's cash flow projections is attached hereto as **Exhibit "B."**[1]

17.    Debtor represents and warrants that it is not aware of the existence of any liens on the Subject Contracts except as follows: EverBright, LLC filed UCC-1 financing statements on October 19, 2023 and November 1, 2023, Document Nos. 2023-005-6519-4 and 2023-005-8354-8, claiming liens on accounts receivable for all projects that Debtor financed through EverBright. Copies of the financing statements are attached hereto as

---

[1] The projections are conservative and assume that as a result of adjustments to the price to be received from Solar Wave and potential terminations, Debtor will not receive the total expected gross revenue listed on Exhibit "A." Sales representative commissions will be adjusted based upon the final contract price and whether any contract is terminated (i.e., no commission will be due on a terminated contract).

4864-7721-5197, v. 1

**Exhibit "C."** But Debtor did not finance any projects through EverBright, so there is no collateral for its purported lien to attach to. Pursuant to 11 U.S.C. § 363(f), the Subject Contracts and all rights appurtenant thereto shall be assigned to Solar Wave free and clear of all liens, claims, and interests, and Debtor shall indemnify, defend, and hold Solar Wave harmless against any liens that are nonetheless asserted against the Subject Contracts as a result of any conduct or agreement of the Debtor occurring prior to the entry of the Sale Order.

18. In the exercise of its reasonable business judgment, Debtor believes that approval of the sale / assignment of the Subject Contracts to Solar Wave is in the best interests of the bankruptcy estate. While Debtor has considered completing the Subject Contracts itself, Debtor does not believe it would be feasible to do so for the reasons set forth above. Debtor believes that the terms of the sale are fair and reasonable. Debtor has made reasonably diligent efforts to market the Subject Contracts to other prospective purchasers / assignees and has been unable to locate anyone willing to purchase the Subject Contracts on terms that are more favorable than those being offered by Solar Wave.

19. Debtor believes, based upon its professional experience and knowledge, that further efforts to market the Subject Contract for sale would be unlikely to result in a substantially greater purchase price. Furthermore, price is not the only consideration, as it is critically important that any contractor who takes over performance has the skill, knowledge, expertise, and resources necessary to complete the projects in a prompt, professional and workmanlike manner. Solar Wave meets all of those criteria, and it would be extremely difficult to find a similarly qualified contractor that is willing and able to close on a purchase of the Subject Contracts and actually complete the required work in the relatively short period of time in which Debtor seeks to consummate the sale. If Debtor is required to delay closing on a sale any longer, whether to undertake additional marketing efforts or for any other reason, it is likely that customers will seek to cancel their contracts on the grounds that work has not been timely completed.

4864-7721-5197, v. 1

## II. The Court Should Approve the Sale / Assignment of the Subject Contracts.

Under 11 U.S.C. § 363(b), the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that Debtor's decision is supported by "some articulated business justification." *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983). When applying the "business judgment" rule, courts show great deference to the debtor's decision-making. *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

Additionally, under 11 U.S.C. § 363(m), the approval of a sale of estate property may not be reversed or modified on appeal absent the entry of a stay pending appeal as long as the buyer "purchased or leased such property in good faith." A good faith purchaser is one who pays value and who acts without "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998). Solar Wave is a buyer in good faith.

Finally, 11 U.S.C. § 363(f) authorizes the sale of estate property free and clear of liens and interests under certain circumstances, including where the lien or interest is in bona fide dispute. In this case, there are no known liens or interests that attach to the Subject Contracts. Given the lack of any UCC-1 financing statements filed against the Debtor's property prior to the Filing Date (except for the one filed by EnerBright, for which none of the Subject Contracts serve as collateral), any lien that may be asserted is in bona fide dispute.

In addition to its authority to sell its assets, a debtor-in-possession may assume or reject executory contracts. "A contract is executory if performance remains due to some extent on both sides." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373–74 (2019). "The bankruptcy court will generally approve" the debtor's choice to assume or reject an executory contract "under the deferential business judgment rule." *Id.*

A debtor may also assign its executory contracts even if applicable non-bankruptcy law

otherwise precludes assignment so long as the debtor assumes the contract and the assignee provides "adequate assurance of future performance … whether or not there has been a default in such contract …." 11 U.S.C. § 365(f). "Adequate assurance of future performance does not require insurance of success or profit. The primary focus is the assignee's ability to provide the counterparty with the full benefit of its bargain …." *In re Vice Group Holding Inc.*, 652 B.R. 423, 429–30 (Bankr. S.D.N.Y. 2023).

In this case, the Subject Contracts are likely executory because some performance remains due on both sides (Debtor must complete the work and the customers must pay the balance of the contract price). Debtor does not believe it is in default of its obligations under any of the Subject Contracts. However, even if a default exists, it will be cured by Solar Wave's performance of the remaining work. As set forth above, Solar Wave is well-qualified to perform Debtor's remaining obligations under the Subject Contracts and to provide the customers with the benefit of their respective bargains.

### III. Conclusion

The Court should approve the sale / assumption and assignment of the Subject Contracts to Solar Wave upon the terms set forth herein free and clear of any liens, claims, or interests and should determine that Solar Wave is a purchaser in good faith.

**DATED** this 26th day of August 2024.

**Engelman Berger, P.C.**

By: */s/ Bradley D. Pack*
    Bradley D. Pack
    Andrew R. O'Keefe
    Attorneys for Sunny Energy, LLC

**COPY** of the foregoing transmitted
via the Court's ECF system and e-mailed
this 26th day of August 2024 to:

Patty Chan
Office of the U.S. Trustee
Patty.chan@usdoj.gov

4864-7721-5197, v. 1

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

| | |
|---|---|
| 1 | James Cross |
| | Cross Law Firm |
| 2 | jcross@crosslawaz.com |
| | Subchapter V Trustee |
| 3 | |
| | Nancy Swift |
| 4 | Buchalter |
| | NSwift@buchalter.com |
| 5 | Attorneys for Landlord / Creditor GKI Industrial Phoenix, LLC |
| 6 | Robert Charles |
| | Lewis Roca Rothgerber Christie LLP |
| 7 | rcharles@lewisroca.com |
| | Attorneys for Consolidated Electrical Distributors, Inc. |
| 8 | |
| | Gary V. Ringler |
| 9 | Gary V. Ringler PLLC |
| | garyvringlerlaw@gmail.com |
| 10 | Attorneys for Obodo Energy Partners LLC |
| 11 | **COPY** of the foregoing mailed |
| | and e-mailed, where noted |
| 12 | this 26th day of August 2024 to: |
| 13 | |
| | Thomas Allen |
| 14 | David Nelson |
| | Allen, Jones & Giles |
| 15 | 1850 N. Central Ave., Suite 1150 |
| | Phoenix, AZ 85004 |
| 16 | tallen@bkfirmaz.com |
| | dnelson@bkfirmaz.com |
| 17 | Attorneys for Arizona Solar Wave LLC |
| 18 | Arizona Solar Wave LLC |
| | c/o Bryan McCormick |
| 19 | 12 W. Main St. |
| | Mesa, Arizona 85201 |
| 20 | |
| | 20 largest unsecured creditors |
| 21 | as listed on bankruptcy schedules |
| 22 | |
| 23 | */s/ Cynthia Nesselrode* |
| 24 | |
| 25 | |
| 26 | |
| 27 | |

11

4864-7721-5197, v. 1